UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| CELIA FRANCES MARTIN, | ) | |
| | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | No. 2:20-cv-00191-SKL |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| | ) | |
| *Defendant*. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Celia Frances Martin ("Plaintiff") brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her disability insurance benefits ("DIB"). Each party has moved for judgment [Doc. 16 & Doc. 20] and filed supporting briefs [Doc. 17 & Doc. 21]. For the reasons stated below: (1) Plaintiff's motion for summary judgment [Doc. 16] will be **DENIED**; (2) the Commissioner's motion for summary judgment [Doc. 20] will be **GRANTED**; and (3) the decision of the Commissioner will be **AFFIRMED**.

## I. ADMINISTRATIVE PROCEEDINGS

According to the administrative record [Doc. 15 ("Tr.")], Plaintiff filed her application for DIB on September 25, 2018, alleging disability beginning June 6, 2017. Plaintiff's claims were denied initially and on reconsideration at the agency level. Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held on February 11, 2020, in Kingsport, Tennessee. On March 2, 2020, the ALJ found Plaintiff was not under a disability as defined in the Social

Security Act at any time from the amended alleged onset date through the date of the ALJ's decision.

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Plaintiff timely filed the instant action.

## II.     FACTUAL BACKGROUND

### A.     Education and Employment Background

Plaintiff was born September 18, 1957, making her 59 years old on the alleged onset date, which is considered a "person of advanced age." 20 C.F.R. § 404.1563(e). She was 62 years old on the date of the ALJ's decision, which is also considered a "person of advanced age." *Id.* She is able to communicate in English. She has past relevant work as a "merchant patroller," which is performed at the light exertional level at a specific vocational preparation level ("SVP") 3 (Tr. 18).

### B.     Medical Records

In her June 2018 Disability Report, Plaintiff alleged disability due to headaches, back pain, and a "cardiac"). While there is no need to summarize all of the medical records herein, the relevant records have been reviewed.

### C.     Hearing Testimony

At the hearing before the ALJ on February 11, 2020, Plaintiff and a vocational expert ("VE") testified. Plaintiff was represented by counsel at the hearing. The Court has carefully reviewed the transcript of the hearing (Tr. 41-58).

2

## III.    ELIGIBILITY AND THE ALJ'S FINDINGS

### A.    Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)).  A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)).  The Social Security Administration ("SSA") determines eligibility for disability benefits by following a five-step process.  20 C.F.R. § 404.1520(a)(4)(i-v).  The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

3

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citations omitted). The claimant bears the burden to show the extent of their impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010) (citations omitted).

**B.    The ALJ's Findings**

The ALJ found Plaintiff met the insured status requirements through December 31, 2022. At step one of the five-step process, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset of disability date, June 6, 2017 (Tr. 28). At step two, the ALJ found Plaintiff had the following severe impairments: (1) degenerative disc disease, (2) arthritis, (3) migraines, (4) bursitis, (5) bilateral shoulder dysfunction, and (6) unspecified pulmonary disorder. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 13-14).

Next, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following additional restrictions:

- She can frequently climb ramps and stairs, but only occasionally climb ladders, ropes, and scaffolds.

- She can frequently balance, stoop, kneel, crouch, and crawl.

- She should avoid more than occasional exposure to extreme heat and cold.

- She can reach overhead with her right dominant upper extremity frequently.

4

- She can have no more than occasional exposure to fumes, odors, dusts, gases, industrial chemicals, or poorly ventilated areas.

- She should not be exposed to anything more than moderate noise intensity level with examples including light traffic or department stores.

(Tr. 14). At step four, the ALJ found Plaintiff was capable of performing her past relevant work as a merchant patroller, as she actually performed it and as it is generally performed (Tr. 18).

These findings led to the ALJ's determination that Plaintiff was not under a disability as defined in the Social Security Act at any time between alleged onset date of June 6, 2017, and the date of the decision, March 2, 2020 (Tr. 18).

## IV. ANALYSIS

Plaintiff argues the ALJ's decision should be reversed and remanded for an award of benefits or in the alternative for further administrative proceedings. She argues the ALJ did not properly evaluate her past relevant work or her subjective allegations. She also argues the Appeals Council did not properly consider records she submitted after the ALJ's decision.

### A. Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citations omitted). The United States Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see*

*also McClanahan*, 474 F.3d at 833.  Furthermore, the evidence must be "substantial" in light of the record as a whole, "taking into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings.  *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) (citations omitted); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971) (citation omitted).  The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility.  *Garner*, 745 F.2d at 387.  The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference."  *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review.  *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

6

### B. Past Relevant Work

Plaintiff does not dispute she has past relevant work in the security field. She contends, however, that her occupation was that of a "supervisor," not a "merchant patroller." [Doc. 17 at Page ID # 1166]. She points out that in her June 2018 disability report and her August 2018 work history report she listed the job as "supervisor" (Tr. 200, 212). On the August 2018 work history report, she indicated she supervised ten people and spent 50% of her time supervising people (Tr. 217). In another August 2018 work history report, she further indicated that she did payroll for 12 employees (Tr. 227). The State Agency Disability Determination Services ("DDS") listed the job as "supervisor," on Plaintiff's disability determination forms (Tr. 72, 88). Plaintiff also points out the merchant patroller job has a level 01 "mathematical development" requirement. She contends that her "description of supervising 10 people and completing payroll for 12 people would require at least the abilities illustrated by a mathematical level of 02, if not higher." [Doc. 17 at Page ID # 1167]. She argues, the "ALJ and the VE failed to properly account for the complete job description and duties Plaintiff performed while working in the field of security" [*id.*] citing the following language from Social Security Ruling ("SSR") 82-62:

> The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision. Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit.

1982 WL 31386, at *3 (SSA Jan. 1, 2019).

The error is not harmless, Plaintiff argues, because if she cannot perform her past relevant work, then she would qualify as disabled under the Medical/Vocational Guidelines in Appendix 2 to Subpart P, given her age and other relevant factors.

7

The Dictionary of Occupational Titles ("DOT") defines a "merchant patroller"[1] as:

> 372.667-038 MERCHANT PATROLLER (business ser.)
> alternate titles: doorshaker; guard; security guard
>
> Patrols assigned territory to protect persons or property: Tours buildings and property of clients, examining doors, windows, and gates to assure they are secured. Inspects premises for such irregularities as signs of intrusion and interruption of utility service. Inspects burglar alarm and fire extinguisher sprinkler systems to ascertain they are set to operate. Stands guard during counting of daily cash receipts. Answers alarms and investigates disturbances [ALARM INVESTIGATOR (business ser.)]. Apprehends unauthorized persons. Writes reports of irregularities. May call headquarters at regular intervals, using telephone or portable radio transmitter. May be armed with pistol and be uniformed. May check workers' packages and vehicles entering and leaving premises.

This occupation is designated R3, M1, L2, with an SVP of 3. R3 means it requires the ability to "apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations."[2] M1, as explained above, requires the ability to add and subtract two digit numbers, multiply and divide tens and hundreds, and "perform the four basic arithmetic operations with coins as part of a dollar. Perform operations with units such as cup, pint, and quart; inch, foot, and yard; and ounce and pound." L2 requires the ability to "speak clearly and distinctly with appropriate pauses and emphasis, correct pronunciation, variations in word order, using present, perfect, and future tenses," and "write compound and complex sentences, using cursive style, proper end punctuation, and employing adjectives and adverbs." SVP is "the amount of

---

[1] The DOT is available on the website for the United States Department of Labor, and the definition for merchant patroller is available at:
https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOT03B.

[2] Appendix C of the DOT defines each component of the "Definition Trailer." It is available at:
https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOTAPPC.

8

lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance." The merchant patroller occupation has an SVP of 3, requiring "over 1 month up to and including 3 months" of training.

Plaintiff testified that she "worked briefly as a security guard," clarifying the job was as a "mall security guard." (Tr. 48). She explained, "We had to patrol the mall outside. I do some reports for them. We had to respond to the retail stores as they called us about a shoplifter." (Tr. 48). At a different point in her August 2018 work history report, she described the job as a "security officer," writing that she was paid $12 per hour, and was required to "patrol mall, assist other officers, type reports & send to corporate office" in addition to her payroll duties (Tr. 227). She wrote that she spent "30%" of her time supervising (Tr. 227). In addition, the DDS job labels appear to have been simply copied from Plaintiffs' own reports and do not represent any actual findings regarding the nature of Plaintiff's past work.

Plaintiff does not specify what occupation in the DOT corresponds to "supervisor" or identify any other occupation in the DOT that more closely fits her past relevant work. She also does not contend she has a composite job. Further, the only inconsistency she identifies between her past work and the description for the merchant patroller is that the merchant patroller occupation requires lesser math skills than the math skills required for a person who performed her past relevant work.

Plaintiff cites to no authority to support the proposition that performing payroll for twelve employees of a mall security company requires greater math skills than those required for an M1 occupation. She does not identify any physical or mental limitations that are inconsistent with the ALJ's finding that she could do her past relevant work, whether it technically qualifies as a "merchant patroller" or not. *See Dugan v. Comm'r of Soc. Sec.*, 742 F. App'x 897, 901 (6th Cir.

9

2018) ("The claimant bears the burden of proof through step four; at step five, the burden shifts to the Commissioner." (quoting *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009))). Moreover, the DOT codes represent *occupations*, each of which represents numerous actual jobs. *See* SSR 00-4p, 2000 WL 1898704 (SSA Dec. 4, 2000).

At the hearing, the ALJ asked the VE if a person with Plaintiff's RFC could perform the "merchant patroller" occupation, and the VE responded that it would. Plaintiff, who was represented by an attorney, did not object to the VE or the ALJ's reliance on that particular occupation. The VE further testified that his answers were consistent with the DOT.

Accordingly, the Court concludes the ALJ did not err by relying on the VE's testimony concerning Plaintiff's past work, and the Court finds the ALJ's step-four determination is supported by substantial evidence in the record. *See Davis-Byrd v. Comm'r of Soc. Sec.*, No. 11-cv-15314, 2013 WL 466199, at \*12 (E.D. Mich. Jan. 10, 2013) (holding ALJ did not err in relying on VE's testimony concerning claimant's past work where claimant "failed to present any evidence suggesting that the ALJ or the VE had mischaracterized her past work, or that there was a discrepancy between her past work and the DOT" at the administrative hearing, and finding claimant waived the issue (citing *Ledford v. Astrue*, 311 F. App'x 746, 757 (6th Cir. 2008) ("Nothing in applicable Social Security regulations requires the ALJ to conduct his or her own investigation into the testimony of a VE to determine its accuracy, especially when the claimant fails to bring any conflict to the attention of the administrative law judge." (brackets omitted)); *Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 168-69 (6th Cir. 2009) ("The ALJ is under no obligation to investigate the VE's testimony beyond the inquiry mandated by SSR 00–4p. This obligation falls to the plaintiff's counsel, who had the opportunity to cross-examine the VE and bring out any conflicts with the DOT. The fact that plaintiff's counsel did not do so is not grounds

10

for relief.")))*, report and recommendation adopted*, No. 11-15314, 2013 WL 461256 (E.D. Mich. Feb. 7, 2013). This is particularly true considering Plaintiff represented she spent only 30-50% of her time supervising, and she testified she was "just walking around . . . most of the time" while working in mall security (Tr. 54).

### C.     Plaintiff's Subjective Allegations

Plaintiff argues she "has consistently alleged impairment symptoms far more limiting than found by the ALJ," including that she can only stand for 40 minutes at a time, sit for 40 to 50 minutes at a time, lift/carry no more than 10 pounds, and further that she needs to lay down during the day, she has twice-weekly migraines with symptoms lasting four to six hours, and she experiences other postural difficulties [Doc. 17 at Page ID # 1169]. She contends these allegations are supported by the overall record. In particular, she contends the ALJ failed to properly consider her the medical record evidence concerning her migraines and failed to review records from the office of Dr. Brian Way.

Plaintiff explains Dr. Way's treatment included chronic pain management. She argues:

> This doctor documents Plaintiff's fluctuating pain levels from a low of 2 out 10 to a high of 8 out of 10 (Tr. 517, 661, 676). Additionally, Dr. Way has noted "Activities affected include general activity, walking ability and normal work" and "Pain has affected mood, relation with other people, sleep and enjoyment of life" (Tr. 517, 661, 676). Proper evaluation of the records from this source is highly relevant in considering and evaluating the allegations and overall impact pain has on Plaintiff's limitations.

[*Id.*].

Regarding her migraines, Plaintiff argues the ALJ mischaracterized or misinterpreted the treatment records. The ALJ referenced an August 2019 treatment note from Tri-State Mountain Neurology, and the ALJ stated: "the claimant's headaches were well controlled with four

11

headaches each month that were successfully treated with Tylenol 3 that she used for back pain." (Tr. 16 (citing Tr. 580)). Plaintiff argues the ALJ failed to address Plaintiff's "report that, even when she takes the medications, it may take 4 – 6 hours before the migraines go [away]." [Doc. 17 at Page ID # 1169]. Plaintiff argues that this indicates the "medication is helpful in treating the migraines, not preventing them, as the ALJ appears to imply." [*Id.*].

The Commissioner argues the ALJ properly "considered Plaintiff's testimony about her limitations," but found it lacking and offered a "detailed explanation of how the evidence in Plaintiff's case led him to conclude she was not as limited as she had testified." [Doc. 21 at Page ID # 1189].

A "two-part analysis is applied in evaluating the complaints of symptoms." *Dunlap v. Comm'r of Soc. Sec.*, No. 20-4179, 2021 WL 5371401, at *6 (6th Cir. Sept. 20, 2021) (citing 20 C.F.R. § 404.1529(a)). The ALJ must first "determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged." *Grames v. Comm'r of Soc. Sec.*, 815 F. App'x 820, 825 (6th Cir. 2019) The ALJ found Plaintiff did in this case. "Next, the ALJ must consider the objective medical evidence and the claimant's reported daily activities, as well as several other factors, to evaluate the intensity, persistence, and functional limitations of the claimant's symptoms." *Id.* At this step, the ALJ found Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were "not supported by the objective medical assessments of record, the claimant's response to treatment, and her conservative treatment course." (Tr. 15). After careful consideration, the Court finds substantial evidence supports the ALJ's conclusion in this regard.

Regarding the migraines, the ALJ did not find that medication "prevented" Plaintiff's migraines, as Plaintiff alleges. Rather, the ALJ noted the migraines were "recurrent and *relieved*

12

by prescription medication" (Tr. 15 (emphasis added)), which is an accurate reflection of the information contained in the records the ALJ cites from a March 2018 appointment at Blue Ridge Family Medicine (Tr. 445-47). The ALJ also noted the August 2019 record from Tri-State Mountain Neurology that Plaintiff cites, which does indeed state that her "headaches," are "successfully aborted with Tylenol 3" (Tr. 580). It further states that the onset of her headache condition was 30 years ago, with the then-current frequency/intensity remaining consistent for the previous two years (Tr. 580). The Court finds the ALJ's interpretation of these records reasonable and supported by substantial evidence.

Plaintiff relies on treatment notes from appointments with Dr. Brian Way in June 2019, August 2019, and September 2019 [Doc. 17 at Page ID # 1169 (Citing Tr. 517, 661, 676)]. She points out that Dr. Way noted at each appointment that "Activities affected include general activity, walking ability and normal work," and that "Pain has affected mood, relation with other people, sleep and enjoyment of life." (*See, e.g.,* Tr. 661).

It is evident from these records that Dr. Way practices at Blue Ridge Family Medicine (Tr. 517), and the ALJ did discuss other records from Blue Ridge Family Medicine (Tr. 15). The June 2019 appointment notes state that Plaintiff presented for a recheck of migraines, but the notes also address her shoulder pain and chronic pain management. Her pain level was noted to 5/10. She was referred to "neurology" for her migraines, and prescribed Standard Acetaminophen-Codeine for her shoulder and back (Tr. 519). She was noted to be in no acute distress and not sickly. For neurological issues, Dr. Way indicated Plaintiff presented with headaches, but not decreased memory, dizziness, fainting, numbness or tingling. For musculoskeletal issues, Dr. Way indicated Plaintiff presented with joint pain and muscle weakness, but not stiffness, swelling, leg cramps or muscle pain (Tr. 518).

13

Notes from the August 2019 appointment state that Plaintiff presented for a "Recheck of Chronic pain management," and that her pain on that day was a 4/10 (Tr. 676). Dr. Way wrote that Plaintiff was "Feeling well." (Tr. 677). An examination of the lumbosacral spine revealed "no tenderness to palpation, no pain." (Tr. 678). Dr. Way continued Plaintiff's Acetaminophen-Codeine and recommended routine physical therapy (Tr. 678). By September 2019, Plaintiff's reported pain level was a 2/10 (Tr. 661). Notes from that visit state Plaintiff "has not had many migraines lately," and the course of her migraines "has been gradually improving." (Tr. 661).

The Court sees no error with the ALJ's failure to specifically mention the records from Dr. Brian Way. The ALJ is "not required to discuss all of the relevant evidence in the record," so long as they consider the evidence as a whole "and reach a reasoned conclusion." *Ricci v. Berryhill*, No. 3:16-CV-651-HBG, 2017 WL 5985801, at *5 (E.D. Tenn. Dec. 1, 2017) (quoting *Dycus v. Astrue*, No. 3:12-CV-78, 2012 WL 4215829, at *7 (E.D. Tenn. Aug. 30, 2012), *adopted by*, 2012 WL 4172138 (E.D. Tenn. Sept. 18, 2012)); *Boseley v. Comm'r of Soc. Sec.*, 397 F. App'x 195, 199 (6th Cir. 2010)). The records cited by Plaintiff from Dr. Way's office essentially reflect routine care, and they do not indicate any significant issues not addressed in other medical records. The ALJ accommodated the issues referenced in Dr. Way's records by assessing Plaintiff with an ability to perform only a limited range of light work. The ALJ cited several pages of exhibit 14F, which contains a number of records specifically from Dr. Way, in addition to other providers at Blue Ridge Family Medicine. As the Commissioner points out, the ALJ specifically discussed "important evidence . . . from around the same summer/early-fall 2019 time-period as Dr. Way's reports," including a physical therapy report stating: "Patient reported she doesn't need PT anymore. She states Dr. Way told her she did not have to come anymore." (Tr. 16 (citing Tr. 660, which is exhibit 14)). The ALJ cited other physical therapy records indicating that, in August

14

2019, Plaintiff reported her knee was "just fine," with low back pain at a 5/10 (Tr. 16 (citing Tr. 672)). Her pain was reduced to 3/10 after the treatment (Tr. 672). Less than a week later, Plaintiff reported that her knee pain "flared up," but that she had no back pain (Tr. 16 (citing Tr. 670)).

The ALJ also discussed other substantial evidence in the record supporting his conclusion that Plaintiff was not as limited as she claimed. In addition to the records addressed above, the ALJ discussed the objective evidence relating to Plaintiff's right shoulder, including 2019 imaging studies showing Plaintiff had mild to moderate issues in her shoulder, and records indicating she was doing "quite well" after receiving a Toradol injection (Tr. 16). The ALJ also cited an August 2019 neurology record which reflected that, on examination, Plaintiff's gait and station were normal for her age, she had negative Romberg testing results, and she was able to normally perform toe-walking, heel-walking, and a squatting rise (Tr. 16, 580)

Further, the ALJ discussed the opinions from the DDS physicians who reviewed Plaintiff's medical records, noting they assigned Plaintiff an RFC for medium exertional-level work. The ALJ found that determination "was supported with a detailed narrative with . . . specific cites to the record," but the ALJ found Plaintiff to be more limited given the evidence concerning her "degenerative disc disease, degenerative joint disease, and pulmonary related impairment," which the ALJ noted the DDS physicians did not consider (Tr. 17). Further, the ALJ reasoned that Plaintiff's "objective medical assessments of record, [her] response to treatment, and her conservative treatment course" were not consistent with a finding of disability (Tr. 17). *See Branon v. Comm'r of Soc. Sec.*, 539 F. App'x 675, 678 (6th Cir. 2013) (A "conservative treatment approach suggests the absence of a disabling condition."). Plaintiff does not take issue with the ALJ's characterization of her treatment as "conservative."

Finally, the ALJ noted Plaintiff lived alone with her disabled husband, her providers

15

encouraged her to increase her physical exercise, and that Plaintiff "alleged problems in her function reports that potentially suggest mental impairments, at the disability hearing, she denied undergoing mental health treatment and no mental impairments are found in [Plaintiff's] brief or presented at the hearing." (Tr. 15). These are all valid considerations in assessing Plaintiff's reported symptoms and complaints.

For these reasons, the Court finds the ALJ properly evaluated Plaintiff's reported symptoms and complaints symptoms in a manner consisted with relevant SSA policies and regulations, including SSR 16-3p, 2017 WL 5180304 (SSA Oct. 25, 2017), and 20 C.F.R. § 404.1529. Such evaluations are properly entrusted to the ALJ, *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citations omitted); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (citation omitted), and Plaintiff has failed to show any harmful error in the ALJ's decision in this regard. *See Rottman v. Comm'r of Soc. Sec.*, 817 F. App'x 192, 194 (6th Cir. 2020) ("Given the deferential substantial-evidence standard, '[c]laimants challenging the ALJ's credibility findings face an uphill battle.'" (quoting *Nettleman v. Comm'r of Soc. Sec.*, 725 F. App'x 358, 360 (6th Cir. 2018))).

### D. Evidence Submitted to the Appeals Council

The Appeals Council "will review a case" on appeal from an ALJ's decision if it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5). The Council will only consider the new and material evidence if the claimant shows good cause for not timely submitting the evidence to the ALJ. *Id.* § 404.970(b). Good cause includes being misled by the SSA; having a "physical, mental, educational, or linguistic limitation" preventing earlier submission; or "[s]ome other

16

unusual, unexpected, or unavoidable circumstance" beyond a claimant's control, including the death of an immediate family member, the destruction of important records, or because the source of the evidence failed to produce it despite active and diligent effort on the part of the claimant. *Id.*

When the Appeals Council denies review, as here, "the ALJ's decision becomes the final decision of the Secretary." *Hammond v. Apfel*, 211 F.3d 1269, 2000 WL 420680, at *3 (6th Cir. Apr. 12, 2000) (table) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993)). On appeal, the Court "still reviews the ALJ's decision rather than the Appeals Council's denial of review." *Id.* (citing *Casey*, 987 F.2d at 1233; *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993)); *see also Graley v. Colvin*, No. 1:14-CV-00728, 2015 WL 3935953, at (N.D. Ohio June 26, 2015) (A "federal court's review is generally limited to the ALJ's decision, not the denial of review by the Appeals Council." (citations omitted)).

Of course, the Court cannot reverse the ALJ's decision based on evidence presented to the Appeals Council but not the ALJ. *Sutton v. Soc. Sec. Admin.*, No. 09-2288, 2011 WL 9482974, at *3 (6th Cir. Apr. 5, 2011) (citing *Cotton v. Sullivan*, 2 F.3d 692, 695-96 (6th Cir. 1993)); *see also Curler v. Comm'r of Soc. Sec.*, 561 F.App'x 464, 472-73 (6th Cir. 2014) ("We have repeatedly refused to consider evidence submitted after the ALJ issued his decision when reviewing that decision for substantial evidence under 42 U.S.C. § 405(g).") (citing *Foster*, 279 F.3d 348, 357 (6th Cir. 2001); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996)). The Court can, however, remand a case for further consideration of a claim in light of new evidence, pursuant to sentence six of 42 U.S.C. § 405(g). Such remand "is appropriate 'only if the evidence is "new" and "material" and "good cause" is shown for the failure to present the evidence to the ALJ.'" *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 509 (6th Cir. 2013) (quoting *Ferguson v.*

17

*Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010)); *see also* 42 U.S.C. § 405(g) ("The court may . . . remand the case to the Commissioner . . . and it may at any time order additional evidence to be taken before the Commissioner . . . but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .").

"'New' evidence is evidence 'not in existence or available to the claimant at the time of the administrative proceeding . . . .'" *Schmiedebusch*, 536 F. App'x at 647 (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)). Evidence is material if it creates "a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Id.* (quoting *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988)). "'Good cause' is demonstrated by 'a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ.'" *Johnson*, 535 F. App'x at 509 (quoting *Foster*, 279 F.3d at 357). "The claimant bears the burden of showing that all three requirements have been met in order to obtain a remand." *Sutton*, 2011 WL 9482974, at *3 (citing *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 653 (6th Cir. 2009)).

Plaintiff argues the Appeals Council improperly denied her request for review [Doc. 17 at Page ID # 1171-73]. In April 2020, nearly two months after the ALJ issued his decision, Plaintiff submitted additional treatment records from Dr. Way dated February 11, 2020, and a "Medical Assessment of Ability to Do Work-Related Activities (Physical)" opinion form completed by Dr. Way dated April 21, 2020.

The February 2020 treatment records are "new" and relate to the time period under consideration by the ALJ. However, as the Commissioner argues, the records do not qualify as material under the relevant standards. Plaintiff went to Dr. Way's office due to a "respiratory

18

illness," described as "nasal congestion" with sinus pain, with no fever (Tr. 36). As the Commissioner argues, nothing about the treatment records indicates this was expected to be a long-term problem for Plaintiff. The "Impression" section of the record states, "The patient was advised to return to the clinic or call if their problem worsens or persists . . . . She will try flonase for now." (Tr. 38). The remaining aspects of this treatment record do not differ from Plaintiff's earlier treatment records with Dr. Way, addressed above. The notes specifically state Plaintiff "feels there has not been much change in her pain since her last visit." (Tr. 36). Plaintiff's pain level was recorded as a 3/10, which she asserted was below average (Tr. 36).

As for Dr. Way's medical opinion, the Commissioner correctly points out that Plaintiff "makes no effort to explain why [she] did not submit the evidence earlier." [Doc. 21 at Page ID # 1195]. Plaintiff implies she requested this opinion from Dr. Way in response to the ALJ's rejection of a different medical opinion. Regarding the other, timely-submitted opinion, the ALJ wrote:

> An opinion from an illegible source containing no medical credentials in the form of a "medical assessment of ability to do work-related activities" suggests that claimant has such significant restrictions [that], if true, would support a finding that she is disabled. Among the significant restrictions found were that the claimant cannot climb, stoop, kneel, balance, crouch, and crawl. She can only lift and/or carry two pounds. She can only stand and walk thirty minutes in an eight-hour day and only sit twenty minutes in an eight-hour day. (Exhibit 5F). The determination by the illegible source lacking noted medical credentials is unpersuasive. The determination contains very little by the way of a narrative explanation and a check mark form is used with pre-provided language. Further, the determination is inconsistent with the objective medical assessments of record, the claimant's response to treatment, and her conservative treatment course. March 7, 2018 medical records indicate that the claimant presented to Megan Long FNP-C of Blue Ridge Family Medicine to establish care. The claimant reported that she felt well and was noted to have minor complaints of decreased energy level. She was noted to be recurrent and relieved by prescription medication. The claimant was noted to experience two migraines a month. On physical examination, the

19

claimant was in no acute distress. A lung examination revealed no wheezes, no rales, and no rhonchi. She had a normal neurological examination. She had a normal gait, station, and posture. (Exhibit 4F, pgs. 7-9). Physical therapy records on September 26, 2019 indicate that the claimant was discharged after reporting that she did not need physical therapy and was informed by her doctor that she did not have to go anymore. (Exhibit 14F, pg. 3). Finally, it should be noted that even if the aforementioned opinion was given by an appropriate medical and/or treating source, it would remain unpersuasive for the reason set out above.

(Tr. 17).

In her brief, Plaintiff argues:

Any possible problems of illegibility or lack of credentials are not present with Dr. Way's opinions. This doctor's name is clearly printed below his signature and the signature is consistent with other signatures provided by this doctor in the treating records (Tr. 30, 39). Further, Dr. Way's credentials are clearly noted after his signatures (Tr. 30, 39). Therefore, Dr. Way's opinion does not succumb to the illegibility and lack of source credential the ALJ used, in part, to reject Dr. Farina's opinion. Therefore, Dr. Way's opinions and supportive records remedy the reasons Dr. Farina's opinion was rejected by the ALJ and supports that there is a reasonable probability this evidence would alter the ALJ's decision. Finally, there is good cause for these opinions and records not being incorporate it into the record earlier as they were created and dated after the morning of the hearing. Dr. Way's records warrant remand for further consideration.

[Doc. 17 at Page ID # 1173].

The Court finds this does not constitute "good cause." Plaintiff does not give any further explanation for not requesting or at least attempting to request the medical opinion evidence sooner. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 149 (6th Cir. 1996) (fact that claimant and attorney did not realize psychological examination would be helpful to claimant's case not good cause for failing to submit evidence before ALJ issued decision); *see also Birch v. Colvin*, No. 13-167-DLB, 2014 WL 2548113, at *4 (E.D. Ky. June 4, 2014) (finding no good cause where claimant

20

"did not realize" his claim was not sufficiently documented until after ALJ rendered decision, and claimant's "brief lacks any explanation for what prevented submission of further medical evidence to the ALJ"). Accordingly, even assuming the new opinion is material, which the Court does not find particularly in light of the ALJ's unchallenged analysis of the prior medical opinion, the Court finds Plaintiff has not shown good cause for obtaining and submitting it in a timely manner.

As a result of this analysis, the Court does not address whether the Appeals Council's stated reasons for declining review is supported by substantial evidence. The Appeals Council found the opinion did not cover the relevant time period because Dr. Way's opinion was dated April 21, 2020, and the ALJ's decision only covered the period of time ending March 2, 2020. The record reflects that at least some of the conditions addressed in Dr. Way's opinion were present during the relevant time period. Neither party addressed this issue, and the Court again notes it generally is required to evaluate the decision of the ALJ as mentioned above. Nevertheless, the Court finds any error in the Appeals Council's analysis is harmless, and the Court will not remand where Plaintiff has not shown she otherwise satisfied the standards cited above for further consideration of her claim in light of the new evidence. As this Court and the Sixth Circuit have repeatedly held, where "remand would be an idle and useless formality," courts are not required to "covert judicial review of agency action into a ping-pong game." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (quoting *NLRB v. Wyman-Gordon*, 394 U.S. 759, 766 n.6 (1969) (plurality opinion)).

Accordingly, the Court finds no harmful error with the Appeals Council's decision to deny review of Plaintiff's claim, or with the ALJ's decision to find Plaintiff was capable of performing her past relevant work. Plaintiff's motion will be denied.

21

**V.    CONCLUSION**

For the foregoing reasons, it is **ORDERED** that:

(1) Plaintiff's motion for summary judgment [Doc. 16] is **DENIED**;

(2) the Commissioner's motion for summary judgment [Doc. 20] is **GRANTED**; and

(3) the Commissioner's decision denying benefits is **AFFIRMED**.

SO ORDERED.

ENTER:

s/ *Susan K. Lee*
_____
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE